IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HAROLD L. DILLARD,

    Plaintiff,

   v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

    Defendants.

No. C 12-04950 SI

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Harold Dillard has sued the City and County of San Francisco, his employer, and Maxwell Chikere, the head of the department for which he works. Dillard alleges he was unlawfully discriminated against, retaliated against, and harassed in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and California's Fair Employment and Housing Act ("FEHA"). Defendants now move for summary judgment. This matter came before the Court for hearing on December 13, 2013. Docket No. 69. Having considered the arguments of counsel and the papers submitted, for the reasons set forth below, the Court GRANTS the motion.

**BACKGROUND**

Dillard is an African American male employed by defendant, the City and County of San Francisco, as a porter at Laguna Honda Hospital ("LHH") in San Francisco, California. Complaint ¶ 1; Answer ¶ 1. Dillard has been employed as a porter with the Department of Public Health since 1983 and began his position in the Environmental Services Department of LHH in 1989. Complaint ¶ 1; Dillard

Depo. pg. 30; Motion pg. 2. Defendant Maxwell Chikere has been the Director of the Environmental Services Department of LHH since 2002. Chikere Decl. ¶ 3.

In 2005, Dillard filed a lawsuit in California Superior Court against the City and County of San Francisco and Chikere alleging discrimination, retaliation, and harassment in violation of FEHA. Opp. pg. 8; Dillard Decl. ¶ 8. The court in the 2005 case granted summary judgment in favor of the defendants. Dillard Decl. ¶ 8. After the 2005 lawsuit, Chikere began the actions Dillard now complains of in his complaint. *Id*. ¶ 7. According to Dillard, over the past several years, while under the general supervision of Chikere, he has been subject to a pattern of continuing, egregious, unlawful and discriminatory employment practices. Complaint ¶ 9. Dillard claims that he has been subjected to: (a) unwarranted, unrelenting, close and excessive scrutiny; (b) continuous harassment; (c) the continuous undermining of his ability to perform his duties; (d) unwarranted criticism; (e) false accusations of unwarranted behavior; (f) the false accusation of abandonment of his post on February 10, 2012; (g) the false accusation of taking an unauthorized break on February 10, 2012; and (h) the false accusation that he falsified his time and attendance records on February 10, 2012. *Id*. Dillard complains that as a result of these actions, he was compelled to leave work on medical disability to seek psychotherapy and has not returned to work since July, 2012. *Id*. ¶ 6. Dillard claims that he has been subjected to these actions on account of his race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and California's Fair Housing and Employment Act ("FEHA").

In his declaration and deposition, Dillard describes multiple incidents related to his employment at LHH, specifically interactions he had with Maxwell Chikere, Carlos Flores, Julio Wong, and Gloria Carreon. Dillard testified that he was subjected to unwarranted and unrelenting scrutiny by Chikere. As a specific example, Dillard testified Chikere scrutinized his every move and described an incident in which Chikere took photos of Dillard's work area and said it was unacceptable. Dillard Depo. pgs. 42-43; Dillard Decl. ¶ 10. Dillard stated Chikere would routinely appear and watch him and on one occasion drove over and sat in his car looking at Dillard. *Id*. pg. 70; Dillard Decl. ¶ 11-12.

As to his claim of continuous harassment, Dillard testified that Chikere would come to his work area, point out things and say that they were not clean, that it was unacceptable, and would call the work area filthy. Dillard Depo. pg. 106. Although Dillard could not testify as to an exact number of such

1   incidents with Chikere, he testified they occurred after he filed the 2005 lawsuit and estimated they
2   happened at least seven times, or perhaps eight or nine times. *Id*. pgs. 108-09. Dillard described another
3   incident in which he saw Chikere pointing at Dillard's area and talking about it (although Dillard was
4   not able to hear what he said). After this incident, Dillard was reminded about the area by his supervisor
5   although he was not written up. *Id*. pgs. 111-112. Dillard testified that he felt those incidents were
6   related to his race because Chikere told him "it was filthy," to his face. *Id*. pg. 129. Dillard also
7   described attending meetings where he would raise his hand, but would be ignored and Chikere would
8   not call on him; Dillard testified that Chikere's refusal to call on him was continuous harassment. *Id*.
9   pgs. 130-31.

10   Dillard also testified that Carlos Flores, a Porter Supervisor at LHH and Dillard's direct
11   supervisor since 2009, subjected him to continuous harassment. *Id*. pg. 137; Flores Decl. ¶ 4. Dillard
12   alleges that Flores harassed him about his work, spoke to him disrespectfully, and said things to him that
13   were incorrect and unprofessional. Dillard Depo. pg. 137. Dillard testified in his deposition that Flores
14   would give him a harsh look and say "What are you looking at? You trying to intimidate me?" and
15   "What is this? What are you doing? You harassing me?" *Id*. After that happened the first time, Dillard
16   stated that he felt threatened and went to the sheriff's department to make a report. *Id*. pg. 138. A copy
17   of this sheriff's report is included in the record as plaintiff's Exhibit 1.[1] The report states that Dillard
18   reported an incident to the Sheriff's Substation on February 4, 2010 regarding an incident with his
19   supervisor, Carlos Flores. Plaintiff's Opp. Ex. 1. The report describes three incidents: one in January,
20   2010 and two in February, 2010. Dillard reported that in January, 2010, Flores said to him, "What are
21   you trying to do, are you trying to intimidate me! I'm not scared of you!" and "I know who you are
22   scared of, you are scared of Maxwell [Chikere]." *Id*. Dillard reported that on February 3, 2010, he
23   confronted Flores because he thought Flores was talking about him to another supervisor. Flores called
24   Dillard "stupid" and asked, "Are you trying to intimidate me?" *Id*. Once Dillard realized Flores was
25   not talking about him, he apologized. A meeting was scheduled for February 4, 2010 to hear the
26   complaint filed with Human Resources. Dillard reported that on February 4, 2010, he signed in for work

---

28   [1] In their declarations both Chikere and Flores state that they were not aware of the sheriff's report and had not previously seen it. Chikere Decl. ¶ 11; Flores Decl. ¶ 5.

3

1  and Flores screamed at him saying, "What are you trying to do! Are you trying to intimidate me?" and
2  Dillard felt he should report the incident "in case something happens." *Id*. In his deposition, Dillard
3  testified that he felt Flores subjected him to continuous harassment over the last five years because this
4  type of interaction happened on three separate incidents. Dillard Depo. pgs. 142-45. Dillard testified
5  that he felt Flores harassed him because of his race. *Id*. pg. 148. Dillard also testified as to continuous
6  harassment by Julio Wong. According to Dillard, Wong recommended that Dillard be written up and
7  reported for leaving linen carts out overnight. *Id*. pgs. 152-54.

8  To support his allegation that he was subjected to the continuous undermining of his ability to
9  perform his duties, Dillard described an incident involving both Wong and Flores. When Dillard was
10 working, Flores and Wong came to his unit and asked him to clean a drain pipe. *Id*. pg. 179. To Dillard,
11 it seemed like the drain pipe had been dirty for a while and they had someone else who worked there
12 five days a week, so he thought they should ask the person that works there everyday to keep it clean
13 instead of asking him. *Id*. pgs. 179-80. Dillard did not know who was supposed to clean the pipe
14 everyday but felt it was harassment for Wong and Flores to ask him to clean it. *Id*. pg. 180.

15 Dillard further testified that he was subjected to the continuous undermining of his ability to
16 perform his duties, citing an incident with Gloria Carreon, a Porter Supervisor at LHH. Carreon
17 questioned Dillard about leaving trash in the area he was assigned to clean and spoke to him as though
18 he had purposefully left trash in his area. *Id*. pgs. 182-83. Carreon's documentation of the incident is
19 included in the record in defendants' Exhibit H. The document is entitled "Memorandum" and states
20 the expectations for Porters to clean and complete their assigned tasks. Motion Ex. H. The document
21 describes an incident on December 14, 2011; it states that Dillard's assigned area was not completed
22 and he did not report this to a supervisor. *Id*. It further states that Carreon spoke with Dillard and
23 Dillard said he forgot to inform the supervisor due to a meeting and that he apologized. *Id*. Dillard
24 testified that he was not disciplined for this event. Dillard Depo. pg. 188.

25 In both his declaration and his deposition, Dillard discussed an incident that occurred on
26 February 10, 2012, and clarified that his claims of false accusation of abandonment of post, false
27 accusation of taking an unauthorized break, and false accusation of falsification of time and attendance
28 records all pertain to that incident. Dillard Depo. pg. 267. Dillard testified that he was working an

4

overtime shift that day; his regular shift was 6:30 am to 3:00 pm and his overtime shift began at 3:30 pm. *Id*. pg. 268. He asked Jose Lopez, a supervisor, for permission to move his vehicle between 3:00 and 3:30 pm. *Id*. Dillard went to move his car, as did another Porter, Michael LeJender. When Dillard was returning from his car, sometime between 3:00 and 3:30, Chikere was looking at him. *Id*. pgs. 269-70. Chikere did not say anything, just looked at him. *Id*. pg. 270. Seven days later, Dillard received a notification that stated he was charged with (I) abandonment of post; (ii) unauthorized break; (iii) falsification of time and attendance records and that he was recommended for a five day suspension. This document, which is titled "Department of Public Health Employee Conference Form," is included in the record as part of defendants' Exhibit D. There was a meeting about the incident, held on February 27, at which Dillard was represented by his union. *Id*. pgs. 273-74. When asked whether he was disciplined for this incident, Dillard replied that he "was disciplined when he gave me the notification right here." *Id*. pg. 276. Dillard testified that he was neither written up nor suspended for the incident. *Id*. pgs. 276-77. Dillard stated that this incident was related to his race because no other race was treated like he was. *Id*. pg. 292.

Accordingly to Dillard, as a result of these incidents, he was forced to leave his job on medical disability and has remained on disability and in psychotherapy since July, 2012. Dillard Decl. ¶ 7; Opposition pg. 8. Dillard filed the present suit on September 21, 2012.[2] Docket No. 1. On January 11, 2013, the Court issued an order relating this case and 12-cv-5450 SI, *LeJender v. City and County of San Francisco et al*. Docket No. 12. Pursuant to the stipulation of the parties, the Court ordered a revised briefing schedule for the two cases. Docket No. 26. Defendants filed this motion for summary judgment on November 8, 2013 and hearing on this motion was held before this Court on December 13, 2013. Docket Nos. 27; 69.

//

//

//

---

[2] On May 23, 2012, Dillard filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Complaint ¶ 15, Complaint Ex. 2. On June 13, 2012 and September 21, 2012, the California Department of Fair Employment and Housing and the United States Department of Justice, respectively, issued Dillard notices of his right to sue. Complaint ¶ 15, Complaint Exs. 1, 3.

5

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

**DISCUSSION**

**I.  Statute of Limitations for Dillard's § 1981 Claims**

Defendants assert that because Dillard filed this suit on September 21, 2012, claims brought under § 1981 for conduct occurring prior to September 21, 2008 are time-barred. Motion, p. 8. Plaintiff states that he makes no claim for events which occurred prior to September 21, 2008. Opp. pg. 17.

1   Section 1981 of the Civil Rights Act of 1866 provides that "[a]ll persons within the jurisdiction of the
2   United States shall have the same right in every State and Territory to make and enforce contracts . . .
3   as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "Like many other federal statutes, § 1981 does
4   not contain a statute of limitations." *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1005 (9th Cir.
5   2011). But, the Supreme Court has held that claims brought under § 1981, as amended by the Civil
6   Rights Act of 1991. are subject to a four-year statute of limitations because they arise under an Act of
7   Congress enacted after December 1, 1990.[3] *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83
8   (2004). Accordingly, Dillard's § 1981 claims in the present case are limited to events which occurred
9   on or after September 21, 2008.

11  **II.      Discrimination Claims**

12  Dillard's first, fourth, and fifth claims allege that defendants unlawfully discriminated against
13  him on account of his race and color in violation of Title VII, § 1981, and FEHA. Title VII prohibits
14  employers from discriminating against individuals on the basis of race, and § 1981 similarly prohibits
15  discrimination in the "benefits, privileges, terms and conditions" of employment. *Surrell v. California*
16  *Water Service Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). When analyzing § 1981 claims, the Court
17  applies the same legal principles as those applicable in a Title VII case. *Id.* (citing *Fonseca v. Sysco*
18  *Food Servs. of Ariz. Inc.*, 374 F.3d 840, 850 (9th Cir. 2004)) (internal quotation mark omitted). Like
19  Title VII and § 1981, California's discrimination provision under FEHA makes it unlawful for
20  employers to engage in specified types of discrimination, including race. *Jones v. Lodge at Torrey*
21  *Pines Partnership*, 42 Cal. 4th 1158, 1161 (Cal. 2008).

22  The burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792
23  (1973) is applicable to Title VII, § 1981, and claims alleging discrimination under FEHA. Under the
24  *McDonnell Douglas* framework, a plaintiff must first prove a prima facie case of discrimination by
25  establishing: (1) he or she is a member of a protected class; (2) he or she was qualified for the position;
26  (3) he or she suffered an adverse employment action; and (4) some other circumstance suggests

---

28   [3] In 1990 Congress enacted a four-year statute of limitations for causes of action arising under an Act of Congress enacted after December 1, 1990. 28 U.S.C. § 1658.

7

discriminatory motive. *See Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011); *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (Cal. 2000). The Ninth Circuit defines adverse employment action "broadly." *Fonseca*, 374 F.3d at 847. An action that "materially affect[s] the compensation, terms, conditions, or privileges" of employment is an adverse employment action under Title VII and § 1981. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)) (citing *Chuang v. Board of Regents*, 225 F.3d 1115, 1125-26 (9th Cir. 2000); *see also Fonseca*, 374 F.3d at 850. Under FEHA, an adverse employment action is one that results in a material adverse change in the "compensation or in terms, conditions, or privileges of employment." *Green v. State*, 42 Cal. 4th 254, 262 (2007); *Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1455 (2002).

Once the plaintiff has established a prima facie case, the burden then shifts to the employer to respond with a legitimate, nondiscriminatory reason for its actions. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). If the employer meets this burden, the plaintiff must then establish that the employer's articulated reasons were "pretext" or a cover-up for unlawful discrimination. The plaintiff may do so by providing "specific, substantial" direct or circumstantial evidence of pretext. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).

Dillard argues that he has been subjected to a) unwarranted, unrelenting, close scrutiny; b) continuous harassment; c) a continuous undermining of his ability to perform his duties; d) unwarranted criticism; e) false accusations of behavior; f) the false accusation that he abandoned his post on February 10, 2012; g) the false accusation of taking an unauthorized break; and h) the false accusation that he falsified his time and attendance records on February 10, 2012. Opp. pg. 18. According to Dillard, these events are "adverse employment actions that were likely racially motivated." *Id*. Defendants do not contest that Dillard, an African American male, is a member of a protected class. Nor do defendants contest that Dillard was qualified.

### 1. Adverse Employment Action

Applying the legal standard for Title VII and FEHA claims, the relevant question for the Court's inquiry is whether the actions Dillard alleges "materially affect[ed] the compensation, terms, conditions, or privileges" of his employment. *Davis*, 520 F.3d at 1089. Dillard argues that the defendants cannot

8

claim that the alleged incidents have not materially altered the terms and conditions of his employment because those actions forced him off the job for 16 months. Opp. pg. 19. Dillard appears to be attempting an argument akin to a constructive discharge claim. The Ninth Circuit has explained, "constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)). However, Dillard presents no argument in his opposition to explain how the actions alleged became "sufficiently extraordinary and egregious" to overcome a reasonable employee's "normal motivation" to earn a livelihood. Taking all of Dillard's declaration and deposition testimony in the light most favorable to him, the non-moving party, the described events do not constitute "sufficiently extraordinary and egregious" working conditions that would "overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Kortan*, 217 F.3d at 1112.

Nor is there any evidence presented in the record showing that the incidents "materially affect[ed] the compensation, terms, conditions, or privileges" of Dillard's employment. *Davis*, 520 F.3d at 1089. Dillard testified that he was not written up or punished after the described incidents, and has not presented evidence that the verbal reprimands or written memoranda affected the "compensation, terms, conditions, or privileges" of his employment. *Id*. Thus, the actions Dillard claims were incidents of unwarranted scrutiny, interferences with his ability to perform his duties, and unwarranted criticism do not amount to adverse employment actions. As to the allegations of false accusations, Dillard testified in his deposition that he was not suspended or written-up following the incident on February 10, 2012. Dillard Depo. pgs. 276-77. The Ninth Circuit has held a plaintiff "need not show that she was fired, demoted, or suffered some financial loss" to demonstrate an adverse employment action. *McAlindin v. County of San Diego*, 192 F.3d 1226, 1239 (9th Cir. 1999). But here, Dillard presents no evidence that the incident materially affected his compensation or the terms, conditions, or privileges

9

of his employment. Dillard has not shown that the alleged incidents were adverse employments action against him.

### 2. **Discriminatory Motive**

Even if the evidence outlined above demonstrated that Dillard was subjected to an adverse employment action, on the present record, Dillard has not provided evidence raising an inference of discrimination on the basis of his race or color. Dillard's reliance on his declaration is unavailing as the pertinent references to his discrimination claim are factual assertions for which Dillard fails to state an evidentiary foundation or personal knowledge, (*see, e.g.* Dillard Decl. ¶ 8 ("Only African American Blacks were subjected to such close scrutiny by Chikere."); *id* ¶ 12 ("As a matter of fact, Chikere targeted African American Blacks only for disciplinary actions without just cause or justification.")), or are conclusions as to the ultimate issue (*see, e.g., id.* ¶ 6 ("Defendants have subjected my fellow African American (Black) employees and me to a pattern of continuing egregious, unlawful, discriminatory employment practices on account of our race and color.")) for which Dillard offers no evidence, other than his personal speculation. Defendant's objections to Dillard's declaration are SUSTAINED.

Dillard also cites the declarations of Anthony Bryant, Kerwin Johnson, Constance Flack, Laura Rankins, and Tyeesha Slater to support his claim he was targeted on the basis of his race and color. Defendants have raised objections to all of these declarations, arguing they lack personal knowledge and foundation (*see, e.g.*, Johnson Decl. ¶ 3 ("On one occasion, Chikere made the comment that he would never hire black people.")), present improper opinion testimony (*see e.g.*, Flack Decl. ¶ 4 ("Chikere has terminated the employment of innumerable Black employees in the Environmental Services Department without cause or justification even though they had for years prior to his arrival they had [sic] satisfactorily performed their assignment.")), or are conclusions of fact and law (*see, e.g.*, Rankins Decl. ¶ 4 ("Chikere's actions and conduct forced me from my employment at Laguna Honda Hospital.")). Moreover, Dillard provides no additional pieces of evidence to support the claims made in these declarations– there are no records of employee dismissals, work assignments, or assistance records. For the purposes of this motion, defendants' objections to these declarations are SUSTAINED.

10

Although Dillard describes events and incidents involving his supervisors at LHH in his declaration and deposition, he has failed to show that these incidents rise to the level of adverse employment action. Dillard has not shown that these incidents materially affected his compensation or the terms, conditions, or privileges of his employment and therefore has failed to present a prima facie case. Nor has Dillard provided evidence that suggests discriminatory motive or "facts to indicate that others outside of his protected class were treated more favorably." *See Guz*, 24 Cal. 4th at 380. Accordingly, the Court finds that Dillard has failed to establish a prima facie case of discrimination under Title VII, § 1981, or FEHA. Summary judgment is GRANTED to the defendants on these claims.

## III. Retaliation Claims

Dillard's second and sixth claims are that he was subjected to unlawful retaliation in violation of Title VII and FEHA after he filed his 2005 FEHA suit against defendants and after he complained about Chikere's conduct towards him. Opposition pgs. 8, 19. Defendants contend that Dillard cannot make a prima facie showing of retaliation because he was not subject to an adverse employment action. Motion pg. 14.

Title VII prohibits an employer from discriminating against an employee for opposing an unlawful employment practice. *Dawson v. Entek Intern.*, 630 F.3d 928, 936 (9th Cir. 2011). Similarly, "FEHA's antiretaliation provision makes it unlawful for an employer to 'discharge, expel, or otherwise discriminate against *any person* because the person has opposed any practices forbidden under this [Act] or because the person has filed a complaint, testified, or assisted in any proceeding under this [Act]." Gov. Code, § 12940 (f); *Sada v. Robert F. Kennedy Medical Center*, 56 Cal. App. 4th 138, 157 (1997). Retaliation claims under Title VII and FEHA follow the *McDonnell Douglas* burden-shifting framework. To establish a prima facie case, the plaintiff must show: (1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action. *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *Yanowitz v. L'Oreal USA Inc.*, 36 Cal. 4th 1028, 1042 (Cal. 2005). "A causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson*, 630 F.3d at 936;

11

*Miller v. Department of Corrections*, 36 Cal. 4th 446, 472 (Cal. 2005). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to provide evidence the adverse action was taken for legitimate, non-discriminatory reasons. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). If the employer provides legitimate, non-discriminatory reasons, the plaintiff must then show the employer's explanation is a pretext for impermissible discrimination. *Id*.

### 1. Protected Activity

To establish a prima facie case of unlawful retaliation, Dillard must first show that he was engaging in protected activity. Protesting the actions of supervisors for their alleged violation of Title VII is a protected activity, as is making informal complaints of such conduct to a supervisor. *Ray*, 217 F.3d at 1240 n.3. Under FEHA, protected action is the opposition of "any practices forbidden under this [Act] or because the person has filed a complaint, testified, or assisted in any proceeding under this [Act]." *Yanowitz*, 36 Cal. 4th at 1042.

Dillard states that he engaged in protected activity by (1) filing a lawsuit against LHH and Chikere in 2005 and (2) protesting discriminatory actions against him. Opp. pgs. 19-20. Dillard's argument is that after returning to work after the 2005 suit, he experienced retaliatory actions in unwarranted, unrelenting scrutiny; continuous harassment; continuous undermining of his ability to perform his duties; unwarranted criticism; and false accusations.

Dillard's 2005 lawsuit, which alleged unlawful discrimination, retaliation and harassment in violation of FEHA, constitutes protected action and defendants do not argue to the contrary.[4] Motion, pg. 15; Dillard Deposition, Ex. E, pgs. 382-86. To establish his prima facie case of retaliation, Dillard must next show that he was subject to an adverse employment action.

---

[4] Defendants do, however, challenge Dillard's assertion that he engaged in protected activity by protesting discriminatory actions against him, arguing Dillard never discussed or complained of discrimination, retaliation or harassment. While the parties do not agree as to whether Dillard complained specifically of discrimination, retaliatory and harassing actions, the analysis of Dillard's prima facie case can proceed on the uncontested protected action of the 2005 lawsuit.

12

### 2. Adverse Employment Action

"The purpose of Title VII's anti-retaliation provision is to bar employers from taking actions which could have a deleterious effect on the exercise of these rights by others." *Passatino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000). The Supreme Court has held that the antiretaliation provision of Title VII, unlike the substantive provision, "is not limited to discriminatory actions that affect the terms and conditions of employment." *Thompson v. North American Stainless, LP*, 131 S.Ct. 863, 868 (2011). "Rather, Title VII's antiretaliation provision prohibits any employer action that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington*, 548 U.S. at 68) (internal quotation mark omitted).[5] Thus, the Court's inquiry to determine if Dillard was subject to an adverse employment action for a Title VII retaliation claim is whether the actions Dillard alleges he endured as retaliation for filing his 2005 lawsuit would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* Dillard was not subject to a suspension without pay or reassignment of duties, which have been considered adverse employment actions for Title VII retaliation claims. *See Burlington*, 548 U.S. at 70. Nor was Dillard fired from his employment, a typical adverse employment action in retaliation cases. *See Thompson*, 131 S.Ct at 865. Taking all of Dillard's allegations together, they do not constitute "employer action that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Thompson*, 131 S.Ct at 868. Accordingly, Dillard has failed to establish a prima facie case of retaliation under Title VII.

The FEHA retaliation provision "serves the salutary purpose of encouraging open communication between employees and employers so that employers can take voluntary steps to remedy FEHA violations, a result that will be achieved only if employees feel free to make complaints without fear of retaliation." *Miller*, 36 Cal. 4th at 475. The California Supreme Court's holding in *Yanowitz*, that "employment actions that can give rise to a claim for retaliation are *identical* to the actions that can

---

[5] "[T]he standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint. By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position" the standard will "screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 69 (2006).

13

1 give rise to a claim for discrimination," remains the standard for FEHA retaliation claims. *Jones v.*
2 *Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158, 1169 (Cal. 2008). Accordingly, the Court's
3 inquiry for Dillard's FEHA retaliation claim is whether the actions he was subject to as retaliation for
4 filing his 2005 lawsuit materially affected the "compensation or terms, conditions, or privileges of
5 employment." *Green*, 42 Cal. 4th at 262; *Akers*, 95 Cal. App. 4th at 1455. As previously discussed with
6 regard to his discrimination claim, Dillard has not presented evidence that his claims constitute adverse
7 employment actions that materially affected "compensation or in terms, conditions, or privileges of
8 employment." *Id*. Thus, Dillard has failed to present a prima facie case for his claim of retaliation under
9 FEHA. Summary judgment is GRANTED to defendants on these claims.

## IV. Harassment

Dillard's third and seventh claims allege he was subject to harassment on account of his race and color in violation of Title VII and FEHA. To establish a prima facie case for a hostile work environment claim under Title VII, the plaintiff must show "(1) she was subjected to verbal or physical conduct because of her race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Manatt v. Bank of America, NA*, 339 F.3d 792, 798 (9th Cir. 2003) (quoting *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002)) (internal quotation marks omitted). The "working environment must both subjectively and objectively be perceived as abusive." *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)) (internal quotation mark omitted). "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Id*. The "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id*. (citations omitted). Similarly, under FEHA, "an employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was *severe enough or sufficiently pervasive* to alter the conditions of employment. . ." *Lyle*, 38 Cal. 4th at 278-79 (emphasis in original).

14

Viewing the evidence in the light most favorable to Dillard, the Court concludes that under Ninth Circuit precedent, the conduct alleged was not sufficiently severe or pervasive to alter the conditions of Dillard's employment. *See Surrell*, 518 F.3d at 1108 (holding plaintiff's claims of her supervisor lodging false allegations against her and publically reprimanding her work was insufficient to support a hostile work environment claim); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642-43 (9th Cir. 2003) (reasoning plaintiff's allegations that his supervisor yelled at him and made negative remarks about him in front of others and filed false complaints about him did not support plaintiff's hostile work environment claim); *Manatt*, 339 F.3d at 799 (holding that several occasions of "racially insensitive 'humor'" directed at an employee amounted only to non-actionable discrimination). The incidents Dillard cites did not "pollute the workplace" such that they altered the conditions of his employment. *See Manatt*, 339 F.3d at 798. Dillard may have felt the incidents were harassing, but that conduct, as perceived by a reasonable person, was not objectively severe, hostile, or abusive. Dillard's hostile work environment claim therefore fails. Summary judgment is GRANTED to defendants on the harassment claims.

## V.      Municipal Liability

Dillard's claims of discrimination, retaliation and harassment fail, so the Court need not decide the issue of municipal liability.

## CONCLUSION

On the current record, Dillard has not presented a prima facie case of discrimination under Title VII, § 1981 or FEHA because he has not demonstrated that he was subjected to an adverse employment action, nor has he provided evidence of discriminatory motive. None of the alleged actions taken against Dillard "materially affect[ed] the compensation, terms, conditions, or privileges" of his employment, and so do not amount to adverse employment actions. *Davis*, 520 F.3d at 1089. For the same reason, Dillard has not made a prima facie showing of retaliation under FEHA. And Dillard has not shown that he was subject to actions that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination," to make a prima facie showing of retaliation under Title VII.

As to Dillard's harassment claims, he has not shown that the alleged conduct was sufficiently severe or pervasive to alter the conditions of his employment and therefore cannot establish a prima facie showing under Title VII or FEHA.

Accordingly, summary judgment is GRANTED to the defendants on all of Dillard's claims.

**IT IS SO ORDERED.**

Dated: February 5, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE